IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

WESTCLAIR, INC, et al.,

Plaintiffs,

v.

COAST CARIBBEAN RECYCLING, INC, et al.,

Defendants.

CIVIL NO. 11-1847 (JAG)

**REPORT AND RECOMMENDATION**

**INTRODUCTION**

On January 20, 2010, Westclair Holdings, LLC[1] ("Westclair Holdings") and co-Defendant Integral Recycling Solutions Inc. ("Integral Recycling") signed a Joint Venture Agreement ("JVA"), whereby co-Defendant Coast Caribbean Recycling, Inc., ("Coast Caribbean") was born. Its purpose was to purchase, process, resell and broker scrap metal. For a variety of reasons, that joint venture was short-lived and ultimately failed. That failure is the main object of this case.

Westclair Holdings is the signatory to the documents at issue in this case, and has never existed. Co-Plaintiff Westclair, Inc. ("Westclair, Inc.") is a corporation organized under the laws of the State of California. The California Secretary of State suspended its powers, rights and privileges on November 1, 2013. Co-Plaintiff Coast Metals, Inc. ("Coast Metals") is also a corporation organized under the laws of the State of California. Co-Defendants Coast Caribbean and Integral Recycling are corporations organized under

---

[1] One of the pivotal issues to be decided in this case is whether Plaintiff Westclair, Inc., has standing to pursue its claims, because the party who signed all documents was Westclair Holdings, LLC, and not Westclair, Inc. That issue will be addressed in this Report and Recommendation, and the Court makes the relevant distinctions between the two entities with the specific intent to differentiate between them.

the laws of the Commonwealth of Puerto Rico.   Co-Defendants César, Iván, Johan and

Javier Vázquez are brothers (sometimes referred to collectively as the "Vázquez

brothers") who are shareholders, directors, managing members and/or officials of

Integral Recycling, and residents of the Commonwealth of Puerto Rico.   Third Party

Defendant Igor Khodorkovsky is the President of Coast Metals and Westclair, Inc.   His

wife Larissa Khodorkovsky, and their conjugal partnership are additional Third Party

Defendants.   Third Party Defendant Daniel Khodorkovsky is the Vice-President of

Westclair, Inc. and Coast Metals.   His wife Hana Benarroch and their conjugal

partnership are also additional Third Party Defendants.

The JVA to form Coast Caribbean was executed by Westclair Holdings and Integral

Recycling in January, 2010.   At that same time, members of Westclair Holdings and

Integral Recycling, as stockholders of Coast Caribbean, executed a Stockholder's

Agreement to govern the administration of the new entity.   Pursuant to both agreements,

both parties had certain responsibilities, as will be discussed in more detail in the

uncontested facts section.

Particularly relevant here, an integral part of the JVA was the exclusive use in

Puerto Rico of the Fastek shipping container loading system, which Westclair Holdings

was obligated to supply as part of its obligations under the JVA.   In the JVA, Westclair

Holdings represented that it owned, patented and otherwise controlled the Fastek

machine.   According to Coast Metals, the Fastek system allowed two people to load a 40'

container in less than 5 minutes, thereby substantially speeding up the scrap loading

operation, which made it attractive to the local joint venture. The agreements also provided for Westclair Holdings and Integral Recycling to hold shares in the Joint Venture of 35% and 65% respectively, and Coast Caribbean was to be governed by a board composed of four representatives of Integral Recycling and one representative from Westclair Holdings. After execution of the agreements for the formation of the JVA, in early February, 2010, one of Westclair Holding's officials, Daniel Khodorkovsky, who signed the joint venture on behalf of Westclair Holdings, relocated with his family from California to Puerto Rico to set up the scrap metal operation and operate the Fastek machine, which was to be delivered to the scrap yard located in Salinas, Puerto Rico.

The parties agree that Coast Metals disbursed to Coast Caribbean the total amount of $125,000.00, as part of a line of credit that Westclair Holdings was supposed to procure under the Agreement. This was paid in the form of three (3) checks payable to Coast Caribbean. Integral Recycling, for its part, supplied a contribution in the form of payments by different subsidiaries and outside companies totaling approximately $297,000. Some payments were made to Coast Caribbean and some directly to third parties to cover Coast Caribbean's debts. The parties dispute whether these monies complied with Integral Recycling's initial investment obligations under the JVA.

After this, events began to go sour. Unsurprisingly, the parties disagree over how the facts unfolded and whose fault was the demise of the short-lived business arrangement. Compounding the problems at hand is the fact that a few months after its

arrival in Puerto Rico, the Fastek machine was repossessed by a third party, the owner of said machine, who was not Westclair Holdings as originally believed.

The end result is that both parties point the finger at each other over the joint venture's failure, and claim damages therefrom.   Defendants additionally sued Igor and Daniel Khodorkovsky, and their wives and conjugal partnerships, alleging "dolo", or fraud and deceit in the drafting and negotiating of the JVA and also claim damages therefrom. Co-Plaintiff Coast Metals, on the other hand, a non-party to the JVA, argues that it is owed monies that it lent to Coast Caribbean as part of the line of credit that Westclair Holdings was supposed to supply and/or arrange for under the JVA.

Before the Court now are motions for summary disposition of all claims by all parties, to wit: Coast Metal's Motion for Summary Judgment (Docket No. 70); Plaintiff Westclair, Inc.'s Motion for Partial Summary Judgment on Liability (Docket No. 73); Defendants' Integral Recycling and the Vázquez brothers' Motion for Summary Judgment (Docket No. 77); and Third Party Defendants Khodorkovskys' Motion for Summary Judgment (Docket No. 78).   On the record are also a variety of oppositions, replies and supplements thereto.

On September 28, 2015, the presiding District Judge referred the aforementioned motions to the undersigned for a Report and Recommendation.   See Docket No. 112. The Honorable Judge also referred Westclair, Inc.'s and Coast Metal's Motion to Strike Defendants' oppositions to their motions for summary judgment (Docket No. 97) and

Defendants' Motion to Strike Igor Khodorkovsky's declaration at Docket No. 88 (Docket No. 110).

For the reasons explained herein below, it is recommended that:

- Coast Metals' Motion for Summary Judgment be DENIED;

- Westclair, Inc.'s Motion for Partial Summary Judgment be DENIED;

- Integral Recycling and the Vázquez brothers' Motion for Summary Judgment be GRANTED IN PART AND DENIED IN PART as follows: GRANTED as to Westclair, Inc.'s lack of standing; GRANTED as to personal liability of Third Party Defendants and DENIED as to "dolo";

- The Khodorkovsky's Motion for Summary Judgment be DENIED.

Regarding the motions to strike, and in an effort to have a more fully developed record, the undersigned recommends that both motions be DENIED.

## STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56 (c). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," and that he is "entitled to judgment as a matter of law." Vega-Rodríguez v. Puerto Rico Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997).

<u>Westclair, Inc., et al. v. Coast Caribbean Recycling, Inc., et. al.</u>
Civil No. 11-1847 (JAG)
Report and Recommendation
Page 6

After the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." <u>Cortés-Irizarry v. Corporación Insular</u>, 111 F.3d 184, 187 (1st Cir. 1997). A fact is deemed "material" if it potentially could affect the outcome of the suit. <u>Id.</u> Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." <u>Id</u>. At all times during the consideration of a motion for summary judgment, the Court must examine the entire record "in the light most flattering to the non-movant and indulge all reasonable inferences in the party's favor." <u>Maldonado-Denis v. Castillo-Rodríguez</u>, 23 F.3d 576, 581 (1st Cir. 1994).

The First Circuit Court of Appeals has "emphasized the importance of local rules similar to Local Rule 56 [of the District of Puerto Rico]." <u>Hernández v. Philip Morris USA, Inc.</u>, 486 F.3d 1, 7 (1st Cir. 2007); *see also*, <u>Colón v. Infotech Aerospace Servs., Inc.</u>, 869 F.Supp.2d 220, 225-226 (D.P.R. 2012). Rules such as Local Rule 56 "are designed to function as a means of 'focusing a district court's attention on what is -and what is not- genuinely controverted.' " <u>Calvi v. Knox County</u>, 470 F.3d 422, 427 (1st Cir. 2006)). Local Rule 56 imposes guidelines for both the movant and the party opposing summary judgment. A party moving for summary judgment must submit factual assertions in "a separate, short, and concise statement of material facts, set forth in numbered paragraphs." Loc. Rule 56(b). A party opposing a motion for summary judgment must

"admit, deny, or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of facts." Loc. Rule 56 (c).    If they so wish, they may submit a separate statement of facts which they believe are in controversy.    Facts which are properly supported "shall be deemed admitted unless properly controverted." Loc. Rule 56(e); P.R. Am. Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 130 (1st Cir. 2010) and Colón, 869 F.Supp.2d at 226.    Due to the importance of this function to the summary judgment process, "litigants ignore [those rules] at their peril."   Hernández, 486 F.3d at 7.

## FINDINGS OF FACT

Pursuant to the parties' submissions, the Court deems the following facts uncontested.   The Court reminds the parties that the Complaint is not evidence, it contains merely allegations. Therefore, no facts were admitted that relied on the Complaint as the proposed facts' sole evidentiary support.

### The Preamble

1. Coast Metals is a corporation organized under the laws of the State of California, with principal offices located at 4761 State Street, Ontario, California 91762.   Coast Metals Exhibit I.

2. Co-Defendant Coast Caribbean Recycling, Inc. is a corporation organized under the laws of the Commonwealth of Puerto Rico.   D. EXHIBIT 15 at ¶ 2.

3.  Co-Defendant Integral Recycling Solutions, Inc. is a corporation organized under the laws of the Commonwealth of Puerto Rico. D. EXHIBIT 15, at ¶ 2.

4.  Co-Defendant Coast Caribbean Recycling was incorporated in December, 2009. D. EXHIBIT 15, at ¶ 2, and Exhibit 1 thereto.

5.  About eight months before the JVA was signed, Iván Vázquez started doing business with Coast Metals, which was represented by Daniel Khodorkovsky. D. Exhibit 2, p. 7, l. 14; p. 8, l. 15.

6.  By November 5, 2009, Daniel Khodorkovsky had prepared a written proposal to form a joint venture between Coast Metals and General Builders, Inc., a company owned by the Vázquez brothers.   Docket No. 67-13.

7.  Said proposal stated that, in order to maintain competitive advantage, Coast Metals Inc., had "partnered with Advanced Steel Recovery Inc. in the development of the Fastek shipping container loading system." D. Exhibit 13, last page, third paragraph.

8.  On November 15, 2009, Daniel Khodorkovsky provided a drawing with the lay-out of the suggested improvements to the yard that would be used for the scrap business. D. Exhibit 23.

9. By November 16, 2009, Daniel Khodorkovsky had provided a drawing with specifications for the slabs needed for the Fastek Machine that would be used for the scrap business.   D. Exhibit 24, and D. Exhibit 6 at ¶ 8.

10. By November 19, 2009, the Khodorkovskys and the Vázquez brothers had already decided the name of the joint venture would be Coast Caribbean Recycling.   D. Exhibit 18.

11. By November 30, 2009, a formal business plan for Coast Caribbean was circulated.   D. Exhibit 19.

12. On January 20, 2010, Westclair Holdings and Integral Recycling became joint partners through the execution of the "Coast Caribbean Recycling Inc. Joint Venture Agreement".   Coast Metals Exhibit IV.

13. Co-defendant César Vázquez, for Integral Recycling, initiated the drafting of the JVA.   Counsel Mark Allenbaugh, for Westclair Holdings, and Daniel Khodorkovsky commented actively and extensively during this process. Coast Metals Exhibit X, p. 76, line 24, p. 77, l. 2-12.

14. From the beginning of the joint venture, Coast Caribbean kept a separate and independent bank account.   D. Exhibit 10.

15. Coast Caribbean filed income tax statements for the years 2010, 2011 and 2012.   D. Exhibit 11.

16. Coast Caribbean filed corporate Annual Reports for the years 2010, 2011 and 2012. D. Exhibit 12.

17. Since its incorporation, Coast Caribbean has conducted itself as an independent entity, separate of its stockholders, directors and officers. Coast Caribbean obtained its own "Employer Identification Number" from the Department of the Treasury Internal Revenue Service.   D. Exhibit 15 at ¶ 3 and Attachment 2 thereto.

18. Coast Caribbean adopted its own By-Laws.   D. Exhibit 15 at ¶ 3 and Attachment 3 thereto.

19. Integral Recycling and Westclair Holdings executed a Stockholder's Agreement as stockholders of Coast Caribbean and issued shares of stock. D. Exhibit 11 at signature page; D. Exhibit 15 at ¶ 3 and Attachment No. 5 thereto.

20. Since its incorporation, Coast Caribbean maintained corporate formalities, including Management Board and Stockholders meetings.   D. Exhibit 15 at ¶ 4 and Attachment No. 4 thereto.

## The JVA

21. The Second Paragraph of the JVA preamble represents that "Westclair [Holdings, LLC] has been in the operation of a full industrial scrap metal firm and has developed proprietary machinery designed to fully automate the containerization of scrap metal for more than 20 years." D. Exhibit 1. p. 4 in the original, p. 5 of docketed Exhibit 1.

22. The Fourth paragraph of the JVA preamble provides: "Whereas IRS [Integral Recycling] and Westclair [Holdings, LLC] wish to purchase, process market, resell, distribute and broker all industrial recyclable materials under a joint venture agreement from Puerto Rico and the Caribbean..." D. Exhibit 1, p. 4 in the original, p. 5 of docketed Exhibit 1.

23. The first paragraph of the JVA provides: "This JOINT DEVELOPMENT, OPERATING, MARKETING AND DISTRIBUTION AGREEMENT (the 'Agreement') is made between Integral Recycling Solutions, Inc., a Puerto Rico corporation ("IRS") with principal offices in Green Hills B-1 Guayama, Puerto Rico 00784 and Westclair Holdings, LLC, a California Corporation ("Westclair") with principal offices at 4761 State St., Ontario California, 91762, dated as of the 20th day of January, 2010". D. Exhibit 1, p. 4 in the original, p. 5 of docketed Exhibit 1.

24. Art. 1.01 of the JVA provides that "Joint Venture" shall mean "the development and operation of Coast Caribbean to be organized between Integral Recycling and Westclair Holdings LLC, which shall include the Stockholder's Agreement." D. Exhibit 1, p. 5 in the original, p. 6 of docketed Exhibit 1.

25. Article 1.01 of the JVA defines Westclair Holdings "Know-How" as "patented inventions, applications, data, processes, compositions, techniques, and other technical information proprietary to Westclair, which

is solely owned by Westclair [Holdings, LLC] or which Westclair [Holdings, LLC] has the right to control the use of Fastek machine." D. Exhibit 1 at p. 4 in the original, p.5 of docketed Exhibit 1.

26. Article 1.01 of the JVA defines the "Fastek Machine" as "an equipment designed to fully automate the containerization of scrap metal, patented and owned by Westclair [Holdings, LLC]." D. Exhibit 1 at p. 5 in the original, p.6 of docketed Exhibit 1.

27. Article 1.01 of the JVA defines "IRS [Integral Recycling] Capital Investment" as: "'IRS [Integral Recycling] Capital Investment' means the capital contribution, if and when needed, to be supplied by IRS [Integral Recycling] for the initial development of the Salinas Scrap Yard and the acquisition of certain equipment and machineries for the operation of the Joint Venture, including overhead expenses for up to three months, as detailed and described in Exhibit E". D. Exhibit 1, p. 6 of the original, p. 7 of the docketed Exhibit 1.

28. Article 2.02(A) of the JVA provides that "the Management Board shall be composed of five people consisting of four officers, representatives or employees of IRS [Integral Recycling] and one representative of Westclair Holdings, LLC." D. Exhibit 1, p. 7 in the original, p. 8 of docketed Exhibit 1.

29. Article 2.02(B) of the JVA provides that all decisions of the Management Board shall be made by vote or written consent with IRS [Integral Recycling] and Westclair each having one vote per representative attending the meeting.   D. Exhibit 1, p. 7 in the original, p. 8 of docketed Exhibit 1.

30. Article 2.02(C)(vi) of the JVA provides that "the Management Board shall be responsible for [...] (vi) approval of any corporate financing terms and conditions." D. Exhibit 1, pp. 7-8 in the original, pp. 8-9 of docketed Exhibit 1.

31. Article 3.01 of the Joint Venture Agreement provides that "...IRS [Integral Recycling] responsibilities related to the development and operation of the Joint Venture are:

   a. purchase and/or lease of certain equipment as identified in Exhibit [E], identified hereinafter as IRS Capital Investment;

   b. staff recruitment;

   c. to assign administrative officers;

   d. obtaining leases, governmental permits, the development of facilities related to the Salinas Scrap Yard improvements and certain capital contributions as identified in this Agreement in Exhibit E".   D. Exhibit 1, p. 10 in the original, p. 11 of the docketed Exhibit 1.

32. Article 3.01 of the JVA provides that once Integral Recycling's Capital Investment is made, Integral Recycling will not have any further obligations

to fund the Joint Venture.   D. Exhibit 1 at p. 10 in the original, p. 11 of docketed Exhibit 1.

33. Article 3.02 of the JVA expressly required for Westclair Holdings to "supply or arrange for a third party to supply for the benefit of the Joint Venture the following:

   a. its industry Know-How;

   b. the guaranteed purchase of all scrap steel materials or any other recyclable materials (including as an example ferrous and non ferrous metals, plastic, cardboard, crystal, automobiles and computer chips) generated from the Salinas Scrap Yard and/or any other future company yard or facilities in Puerto Rico of the Caribbean;

   c. all exporting concerns and licenses;

   d. using its corporate experience and Know-How to coordinate the shipping route for its final destination with a reputable shipping company and provide or cause to provide, at its cost, an extended line of credit for all material purchases backed by Purchase Orders for the benefit of the Joint Venture;

   e. free lease, transportation costs and training of the Fastek machine(s) and related equipment."   D. Exhibit 1 at p. 10 in the original, p. 11 of docketed Exhibit 1.

34. Article 4.03(B) of the JVA provides that: "Westclair [Holdings, LLC] shall use its expertise and commitment for all initial set up facilities, operational, structuring, and future expansion. Westclair [Holdings, LLC], by and through its designated representative, whom, with the exception of Mr. Daniel Khodorkovsky, shall meet the minimum requirements set forth in Exhibit F to act as an official representative of Westclair [Holdings, LLC] to the Joint Venture, will devise and implement a comprehensive operations plan, which plan shall be approved by the Management Board. This will include facility design and organization, staff training, managerial hierarchy and labor force structure. Westclair [Holdings, LLC] will also develop aggressive sales/marketing strategies aimed at attracting maximum business from both commercial and peddler markets; the designated representative of Westclair [Holdings, LLC] shall commit to move to Puerto Rico with the arrival of the FASTEK, and make a commitment for a minimum of one year to help, advise, implement and structure the Joint Venture, and shall be compensated according to the structure set forth in Exhibit G. Finally, the Joint Venture shall have the full backing and support of Westclair [Holdings, LLC] for the success and growth during the lifetime of the Joint Venture and such backing shall be part of Westclair [Holdings, LLC] contribution to the Joint Venture". D. Exhibit 1, p. 11 in the original, p. 12 of docketed Exhibit 1.

35. Article 14.01(A) of the JVA provides that "Westclair Holdings, LLC is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, has the corporate power and authority to own and operate its properties and assets and to conduct its business as presently conducted, and is qualified to do business as a foreign corporation and is in good standing in the Commonwealth of Puerto Rico and in all other jurisdictions where such qualification is required, except where failure to so qualify would not have a material adverse effect on the condition (financial or otherwise), results of operations, business, assets, or prospects of Westclair Holdings, LLC. As of the date of this Agreement, Westclair Holdings, LLC has no majority-owned, consolidated subsidiaries."   D. Exhibit 1, pp.18-19 in the original, pp. 19-20 of docketed Exhibit 1.

36. Article 14.01(B) of the JVA stated that Westclair Holdings "has corporate power and authority to execute, deliver and perform this Agreement [...]". D.   Exhibit 1, p. 19 in the original, p. 20 of docketed Exhibit 1.

37. Article 14.01(R) of the JVA stated: "This Agreement and the other documents, certificates or written statements furnished or to be furnished to IRS [Integral Recycling Solutions] by or on behalf of Westclair [Holdings, LLC] in connection with the transactions contemplated by this Agreement, taken as a whole, do not, as of the date of this Agreement, contain any untrue statement of a material fact or omit to state a material fact necessary

to make the statements contained therein, in light of the circumstances in which they were made, not misleading. The representations and warranties of Westclair [Holdings, LLC] set forth in this Agreement are true and correct as of the date of this Agreement and IRS [Integral Recycling Solutions] shall have received a certificate to that effect signed on behalf of Westclair [Holdings, LLC] by an authorized officer of Westclair [Holdings, LLC]".   D. Exhibit 1, p. 20 in the original, p. 21 of docketed Exhibit 1.

38. Article 14.02 of the JVA provides that "Westclair [Holdings, LLC] shall indemnify IRS [Integral Recycling] for any losses sustained or expenses incurred by IRS as a result of a breach by Westclair [Holdings, LLC] of any of the foregoing representations and warranties."   D. Exhibit 1, p. 20 in the original, p. 21 of docketed Exhibit 1.

39. Section 16.07 of the JVA states that "[...] This Agreement is for the sole benefit of the parties hereto and nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon any Person, other than the parties and successors and assigns permitted by Section 16.06, any right, remedy or claim under or by reason of this Agreement." D. Exhibit 1, p. 24 in the original, p. 25 of docketed Exhibit 1.

40. 'Exhibit E' to the JVA, itemizes Integral Recycling's total $297,516.50 investment as follows:

    a.   $75,000.00 for Excavator/Grapple;

  b.  $60,000.00 for Scale 60';

  c.  $32,000.00 to improve site;

  d.  $43,505.50 for the first month operating expenses;

  e.  $43,505.50 for the second month operating expenses; and,

  f.  $43,505.50 for the third month operating expenses. D. Exhibit 1, p. 37 page, not enumerated in the original, p. 38 of docketed Exh. 1.

### The Aftermath

41. Westclair Holdings provided monies to the joint venture through an arrangement with third parties, which terms are unknown to César Vázquez.   According to the records, the third parties were Coast Metals and Advanced Steel Recovery.   Coast Metals Exhibit X at p. 32, lines 14-15; p. 33, lines 8-7.

42. Coast Metals was not a party or partner to the JVA. Coast Metals Exhibit IV.

43. Coast Metals disbursed to Coast Caribbean the total amount of $125,000.00 in the form of three (3) checks payable to Coast Caribbean, as follows: (i) United Commercial Bank's check number 1667 issued on April 22, 2010 for Fifty Thousand Dollars ($50,000.00) to purchase new equipment in substitution of other capital items, and as agreed upon by the Coast Caribbean board; (ii) United Commercial Bank's check number 1668 issued on April 22, 2010 for Fifty Thousand Dollars ($50,000.00) as an advance for the purchasing of material; and (iii) United Commercial Bank's check

number 1669 for Twenty-Five Thousand Dollars ($25,000.00) issued on May 14, 2010 also as an advance for the purchasing of scrap metal material. Coast Metals Exhibits V, VI, & VII; Docket No. 67, Exhibit 10, pp. 3-4.

44. Besides Iván Vázquez, the other Vázquez brothers had little or no involvement in the day to day dealings of Coast Caribbean.   Coast Metals Exhibit VIII, p. 4, p. 6, 8; Coast Metals Exhibit IX, p. 6, 10; Coast Metals Exhibit X, p. 35, l. 11-17.

45. The land lease for the Salinas Yard was not directly executed with Coast Caribbean or Integral Recycling; it was executed by a company established by Iván Vázquez, Caribbean Metal Traders, who then sub-leased it to Coast Caribbean.   Coast Metals Exhibit XI at p. 123, lines 1-24; Docket No. 93, Exhibit 5.

46. At some point, Igor Khodorkovsky, Daniel's father, called César Vázquez to tell him that his son Daniel and Iván Vázquez "were having difficulties in trying to ... communicate effectively among themselves".   Coast Metals Exhibit X, p. 78, l. 18-24; p. 79, l. 1-4.

47. Iván Vázquez spent almost every day in the Salinas Yard.   Coast Metals Exhibit X at p. 28, l. 9-12.

48. Iván Vázquez had taken "charge of the yard" when Daniel Khodorkovsky was not there.   Coast Metals Exhibit XI, p. 58, l. 21-23, p. 59, l. 1.

49. When asked if he used vulgar or threatening language against Daniel Khodorkovsky, Iván Vázquez stated that he "made some claims" through emails and that "of course I'm going to be mad."   Coast Metals Exhibit XI, p. 82, l. 21-22.

50. As part of its Proof of Claim in Coast Caribbean's bankruptcy proceedings, Integral Recycling included the payment of what it states was the initial contribution to Coast Caribbean in the form of a Proof of Claim ("POC") #8 filed in the Bankruptcy Court in In Re: Coast Caribbean Recycling, Inc., Case No. 14-1133 (EAG).

51. In Exhibit 2 of Integral Recycling's Proof of Claim, it included as proof of the $300,000.00 loan to Coast Caribbean some invoices not directed at Integral Recycling or Coast Caribbean.   They are: from General Builders Construction Corp. to: Alex Santiago; Modesto Guzmán de León; and to a variety of other entities; wire transfers from Construction Administration Group, Inc. to: Loperena Equipment Inc.; Capson, Inc.; Renan García; Ing. Jose Luis González; and Iván Vázquez Morales.   Coast Metals Exhibit XII, pp. 1-7, 8, 9, 13-16, 25, 27, 29, 30, 31, 34, 36, 40.

52. Integral Recycling procured a number of payments to be made by several entities either directly to Coast Caribbean or directly to other parties to cover Coast Caribbean's debts:

    a.  Vista del Sol Group issued four third-party checks to Integral Recycling for a total of $131,562.00;

    b.  General Builders Construction Corp. paid a total of $30,283.80;

    c.  Construction Administration Group paid a total of $130,960.66;

    d.  RedPartners, Inc., issued a check to Coast Caribbean in the amount of $10,000.00.   Docket No. 84-5 pp. 35-38; D Exhibit 15, ¶ 5; D. Exhibit 16.

53. Neither Westclair Holdings nor the Khodorkovskys ever produced any Purchase Orders. D. Exhibit 13, p. 4.

54. Daniel Khodorkovsky was aware of the fact that Caribbean Metal Traders was the lessor of the land on which the scrap yard was located and when he signed the JVA.   Docket No. 74-3, Exhibit B, pp. 30-34, and D. Exhibit 21.

55. There are five invoices from Engineer José Luis González Cruz to Caribbean Metal Traders.   Dkt. 84-2 p. 23; Dkt. 84-3 p. 35; Dkt. 84-5 pp. 1, 5 and 7. Mr. González provided professional services to Coast Caribbean related to the Salinas scrap yard site wherein Coast Caribbean ran its operation. Id.

56. An invoice from Advance Scale Co., Inc. to the attention of Daniel Khodorkovsky showed Coast Caribbean purchasing a scale.   Docket No. 84-3, p. 20.

57. An invoice from Caribbean Controls Group, Inc. to "Reciclaje de Salinas" shows services provided were for the calibration and certification of the scale.  Docket No. 84-4 at p. 12.

58. Daniel Khodorkovsky knew that Loperena Equipment and Renan García were providing professional services to the Coast Caribbean scrap yard. Dkt. 67-2, pp. 2-3; D. Exhibit 20.

59. An essential reason why Integral Recycling agreed to enter in the JVA with Westclair Holdings was to obtain a competitive advantage in the local market by acquiring the exclusive right to use in Puerto Rico the Fastek shipping container loading system.  D. Exhibit 15, ¶ 11.

60. The person who executed the JVA on behalf of Westclair Holdings was Daniel Khodorkovsky.  D. Exhibit 1, p. 26 in the original, p. 27 of docketed Exhibit 1.

61. According to the records of the Secretary of State of Delaware, Division of Corporations, Westclair Holdings does not exist and has never existed. See D. Exhibit 5.

62. According to the records of the Secretary of State of California, Division of Corporations, Westclair Holdings does not exist and has never existed. D. Exhibit 6.

63. Plaintiffs admitted that they never used the name Westclair Holdings as a trade name or d/b/a, and never registered that name in the California Registry of Fictitious Names.   D. Exhibit 18, p. 85, l. 3-24; p. 86 l. 1.

64. Igor Khodorkovsky, admitted that there is no information that would allow a conclusion that Westclair Holdings had corporate power, since it does not exist.   D. Exhibit 18, p. 34, l. 16-24; p. 35, l. 15.

65. Westclair Holdings never had a bank account or a federal Employer Identification number.   D. Exhibit 18, p.39, l. 19-24.

66. Plaintiffs' President, Igor Khodorkovsky, admitted that Westclair Holdings was not registered to do business in Puerto Rico.   D. Exhibit 18 at p. 72, l. 14-17.

67. Igor Khodorkovsky admitted that the Westclair Holdings representations made in Art. 14.01(A)[2] are not true, and he never told anybody they were not correct. D. Exhibit 18, p. 24, l. 3-7, 14-19, 23-24; p. 31, l. 13; p.32, l.5; p. 75, l. 8-21; p. 154.

68. The fact that Westclair Holdings did not exist, however, was not brought to Defendants' attention by Plaintiffs and/or the Khodorkovskys.   D. Exhibit 18 at p.30, l. 17; p. 31, l. 1.

---

[2] See Uncontested Fact Nos. 35, 36 and 37, regarding representations as to Westclair Holdings' organization, incorporation and good standing, generally.

69. The Stockholder's Agreement shows signatures by both Daniel J. Khodorkovsky and Igor Khodorkovsky as stockholders of Westclair Holdings.   D. Exhibit 11 at p. 25; D. Exhibit 17 at p. 76, l. 22; p. 77 l. 14; D. Exhibit 18, p. 36, l. 14; p. 37, l. 2.

70. Daniel Khodorkovsky hand-wrote the name "Westclair Holdings LLC" on the execution page of the Stockholder's Agreement, directly above his signature.   D. Exhibit 11, p. 25; D. Exhibit 17, p. 76, l. 22; p. 77, l. 14.

71. There are no documents that suggest that Daniel J. Khodorkovsky signed on behalf of an entity other than Westclair Holdings.   D. Exhibit 17, p. 100, l. 8-20; D. Exhibit 17, p. 82, line 7; p. 101, line 20.

72. No documents pertinent to the transactions at issue contain the name Westclair, Inc.   D. Exhibit 17, p. 100, l. 15-17.

73. According to the records of the Secretary of State of Puerto Rico, Westclair Holdings has not been registered to do business in Puerto Rico.   D. Exhibit 7.

74. According to the records of the Secretary of State of Puerto Rico Westclair, Inc., has not been registered to do business in Puerto Rico.   D. Exhibit 18, p. 72, l. 14-17; D. Exhibit 9.

75. Westclair Holdings' attorney, Mark H. Allenbaugh, reviewed and commented the JVA on behalf of Daniel and Igor Khodorkovsky before they signed it.   D. Exhibit 17 at p. 87, l. 6-15.

76. The Equipment Services Agreement that leased the Fastek machine identifies Westclair Holdings as a California Limited Liability Company, and Fastek LLC, as the parties to that agreement.  Daniel Khodorkovsky signed it on behalf of Westclair Holdings as alleged Group Vice President. D. Exhibit 3.

77. None of the Defendants is a party to the Equipment Services Agreement that leased the Fastek machine. D. Exhibit 3.

78. Although Westclair Holdings has never existed, Igor Khodorkovsky declared under oath, and its attorney of record, Victor J. Quiñones, filed a request for *Exequatur* on November 23, 2010 with the Court of First Instance, San Juan Part, in Civil no. K ET10-0015 (903), that Westclair Holdings was a duly organized California Company.   D. Exhibit 4, p. 2 and p. 4.

79. Plaintiff Westclair, Inc. and Coast Metals are not parties to the Stockholder's Agreement.   The signatories were the stockholders for Westclair Holdings and Integral Recycling.   D. Exhibit 11, pp. 1, 4 and 25.

80. Plaintiffs' President, Igor Khodorkovsky, never sent any correspondence to the Vázquez' brothers or Coast Caribbean on Westclair, Inc. letterhead.   D. Exhibit 18, p. 40, l. 7-10.

81. The California Secretary of State suspended Westclair, Inc.'s powers, rights and privileges on November 1, 2013, and they remain suspended today.   D. Exhibit 8.

82. There is no document that demonstrates that Integral Recycling entered into an agreement with Coast Metals, Inc. and/or Advanced Steel Recovery, Inc. and/or the Khodorkovskys, for any loan, promissory notes, advances, lines of credit, or any other payment obligation whatsoever, as no such agreement exist.   D. Exhibit 15 at ¶ 7. K.

83. Igor Khodorkovsky admitted that Coast Metals, together with Westclair, agreed with Advanced Steel to supply the line of credit required of Westclair Holdings in the JVA on the basis of a handshake agreement by himself and on behalf of his two corporations and Mr. Frankel, the president of Advanced Steel.   None of the Defendants participated in that agreement. D. Exhibit 18, p. 78, l. 14; p. 87, l. 24.

84. No document exists that evidences that any of the Vázquez Defendants entered into an agreement with Coast Metals, Inc. and/or Advanced Steel and/or the Khodorkovskys, for any loan, promissory notes, advances, lines of credit, or any other payment obligation whatsoever, as no such agreement exists.   D. Exhibit 15 at ¶ 8.

85. No document exists that evidences that Coast Caribbean entered into an agreement with Coast Metals, Inc. and/or Advanced Steel and/or the

Khodorkovskys, for any loan, promissory notes, advances, lines of credit, or any other payment obligation whatsoever, as no such agreement exists. Exhibit 15 at ¶ 9.

86. There is no Management Board resolution approving any loan, promissory notes, advances, lines of credit, or any other payment obligation whatsoever, to Coast Metals, Inc. and/or Advanced Steel and/or the Khodorkovskys.   D. Exhibit 15 ¶ 10.

87. The Management Board of Coast Caribbean held a Board meeting on April 20, 2010.   D. Exhibit 18, at p. 114, l. 8-10.

88. The April 20, 2010 meeting was notified pursuant to Coast Caribbean's Bylaws.   D. Exhibit 17, p. 126, l. 20-24; p. 127, l. 1.

89. At the April 20, 2010 meeting, Johan Vázquez was designated secretary and he prepared minutes that were provided to Daniel Khodorkovsky.   D. Exhibit 10.

90. There was quorum at the April 20, 2010 Board Meeting.   D. Exhibit 18, p. 126, l. 11-15; D. Exhibit 10.

91. The Khodorkovskys received a copy of the minutes and on June 22, 2010. César Vázquez sent an email to them asking them to make whatever corrections, deletions and additions they deemed appropriate, but they failed to do so.   D. Exhibit 17 at p. 130, l. 13-24; p. 131; l. 1-6; D. Exhibit 14; D. Exhibit 18, p. 135, l. 10-14.

92. Igor Khodorkovsky, admitted that the statement that "Coast Metals, Inc. has partnered with Advanced Steel Recovery, Inc. in the development of the Fastek shipping container loading system" was not true. D. Exhibit 18 at p. 149, l. 18-24; p. 150, l. 6.

93. Fastek, LLC owns the Fastek machines.   D. Exhibit 18, p. 51, l. 7; p. 52, l. 4.

94. Westclair Holdings leased a Fastek machine from Fastek, LLC.   Daniel Khodorkovsky executed the Equipment Services Agreement for the Fastek machine on behalf of Westclair Holdings.   D. Exhibit 3; D. Exhibit 17, p. 82, l. 9-23; D. Exhibit 18, p. 57, l. 7-24.

95. Plaintiffs Coast Metal and Westclair Inc., never owned a Fastek machine or its patents.   D. Exhibit 18, p. 72, l. 23-24; p. 73, l. 16.

96. The Equipment Services Agreement provides that at all times the equipment that is, the Fastek Machine, is the sole and exclusive property of Fastek.   D. Exhibit 3, p. 2, ¶ 4.

97. Westclair Holdings was responsible for bringing the Fastek Machine to Puerto Rico, which arrived sometime in April, 2010. D. Exhibit 17, p. 140, l. 4-22.

98. Daniel Khodorkovsky moved to Puerto Rico at the beginning of the year 2010 and worked in Puerto Rico from February 8, 2010 until June 3, 2010. D. Exhibit 17, p. 18, l. 12-17; p. 21, l. 8-17.

99. Between February 8, 2010 and June 3, 2010, Daniel Khodorkovsky ran the scrap yard business.   D. Exhibit 17, p. 146, lines 22-24; p. 146; p. 147, l. 1-5).   He also arranged for and negotiated the shipments of scrap metal.   D. Exhibit 17, p. 141, l. 18-24; p.142, l. 1-24; p. 147, l. 17-24; p. 150 l. 14-16.

100. Oceanic General Agency Inc. ("Oceanic"), is the Puerto Rico agent for Mediterranean Shipping Company.   D. Exhibit 20, p. 14, l. 9-17; p. 16, l. 4-14.

101. Daniel Khodorkovsky was responsible for negotiating and dealing with Oceanic.   D. Exhibit 19, p. 69, l. 24; p. 70, l. 2.

102. Oceanic was the shipping agent used for the shipment of scrap metal owned by Coast Caribbean. Daniel Khodorkovsky was the main contact between Coast Caribbean and Oceanic and the only person with whom Oceanic's representatives spoke to regarding the shipment of such scrap. D. Exhibit 20, p. 89, l. 9-22.

103. Coast Caribbean made no profits, as that term is defined in Article 1.01 of the JVA.   D. Exhibit 15 at ¶ 6.

104. Igor Khodorkovsky admitted that he understood that there was no evidence that Coast Caribbean made profits, and that neither Coast Caribbean, the Vázquez brothers nor Integral Recycling received any money from the shipment of 1,000 metric tons of scrap that Daniel Khodorkovsky negotiated.   D. Exhibit 18, p. 212, l. 23; p. 213, l. 20.

105. No evidence exists showing that Coast Caribbean disregarded corporate formalities.   D. Exhibit 18 at p. 207, l. 20, p. 208; p. 209, l. 13; D. Exhibit 19, p. 74, l. 14-24; p. 75, l. 15.

106.   No evidence exists showing that Coast Caribbean misused or comingled its assets. D. Exhibit 18, p. 209, l. 17; p. 210, l. 23; D. Exhibit 19, p. 75, l. 20-24; p. 76, l. 6; D. Exhibit 19, p. 76, l. 7-24; p. 79 l. 24.

107.   No evidence exists showing that Coast Caribbean conducted its business without adequate financial basis.   D. Exhibit 18, p. 211, l. 1-24; p. 212, l. 13; D. Exhibit 19, p. 80, l. 2-24; p. 81; p. 82, l. 16.

108. Igor Khodorkovsky cannot point to anything that the Vázquez brothers or Integral Recycling took from Coast Caribbean and put it in their pockets. He also has no evidence that the individual officials disregarded the corporate formalities or misused the assets of Integral Recycling.   D. Exhibit 18, p. 212, l. 14-22.

109. Daniel Khodorkovsky cannot recall if individual officials disregarded the corporate formalities; whether the officers comingled Integral Recycling's assets; whether Integral Recycling was receiving anything from Coast Caribbean; whether evidence exists that any monies were being sent to Integral recycling; and cannot tell of any unlawful or fraudulent actions that would merit piercing the corporate veil of Integral Recycling and finding the

individual co-Defendants liable for such acts.   D. Exhibit 19, p. 81, l. 24; p. 82; p. 83, l. 1-14.

110. Plaintiff Coast Metals, Inc. stopped doing business in the year 2013. D. Exhibit 18, p. 22 l. 8 -24; p. 23, l. 4.

## LEGAL ANALYSIS

### A. Coast Metals.

1. <u>Repayment of the Credit Line</u>.

Coast Metals' first argument is that its line of credit has not been repaid.   As has been established via the uncontested facts, it was Westclair Holdings' responsibility to obtain, at its cost, a line of credit for all material purchased backed by purchase orders for the benefit of the joint venture.   Westclair Holdings could do so itself or "arrange for a third party to supply" said line of credit.   Westclair Holdings did so by having Coast Metals issue three checks totaling One Hundred and Twenty-five Thousand Dollars ($125,000.00).

It has been well established under Puerto Rico law that "[c]ontracts shall only be valid between the parties who execute them and their heirs, except, with regard to the latter, the case in which the rights and obligations arising from the contract are not transmissible, either by their nature, or by agreement, or by provision of law."   P.R. Laws Ann. tit. 31, § 3374.   <u>See also</u> <u>Dennis, Metro Invs. v. City Fed. Savs</u>., 121 D.P.R. 197 (1988) ("Contracts only regulate relations between parties and, as such, are irrelevant with respect to third parties"); <u>Suárez v. Hernández</u>, 56 P.R.R. 262, 268 (1940)("Actions *ex*

*contractu . . .* can only be prosecuted by either party to the contract against the other"); and L. Díez-Picazo, Fundamentos del Derecho Civil Patrimonial 281, Madrid, Ed. Tecnos (1979) (The general rule is that a contract is irrelevant as to a third person because it simply regulates the contractual relations between the executing parties and does not even affect the third party).

In the case at bar, the signed contract was between Westclair Holdings and Coast Caribbean.   Presumably, an agreement between Westclair Holdings and Coast Metals governed this particular loan, but that is irrelevant to this case, as Coast Caribbean was not a signatory to that agreement.   While Coast Metals is correct in claiming that "the repayment of the sums it loaned to Coast Caribbean is not contingent upon the resolution of disputed between Westclair, Coast Caribbean and the other parties to the agreement",[3] that repayment is, in fact, contingent upon whatever agreement Coast Metals reached *with Westclair Holdings* upon signing, which is not at issue here.

Coast Metals counters with an exception to the aforementioned article, via the Puerto Rico Supreme Court's ruling in the case of Dennis, Metro Invs. v. City Fed. Savs., 121 D.P.R. 197 (1988).   It posits that third party contractual damages may be recovered when: (1) that a third person has been affected; (2) that said third person has sustained injury; (3) that a causal nexus exists between the injury and the contract; and (4) that there is intent to cause injury, either by both contracting parties or by only one of them. Id. at 212.   The Court cannot agree.

---

[3] See Docket No. 72, p. 10.

<u>Westclair, Inc., et al. v. Coast Caribbean Recycling, Inc., et. al.</u>
Civil No. 11-1847 (JAG)
Report and Recommendation
Page 33

In <u>Dennis</u>, the Supreme Court found that a contract for the purchase of an apartment had directly affected a third party who had already optioned the same apartment.  This is the reason why the exception requires that the causal nexus must exist between the injury and the contract.   The contract to sell in <u>Dennis</u> directly affected the third party's already existing option, because that third party could no longer purchase the apartment unit.

The Court cannot find such a causal nexus here, for two reasons. First, there is no contract that affected Coast Metals.   Coast Metals simply gave the moneys to Westclair Holdings, who in turn gave them to Coast Caribbean.   The JVA between Westclair Holdings and Coast Caribbean had already been signed over three months before, so that cannot be the contract that caused alleged harm to Coast Metals.   Second, since there is no contract that affected Coast Metals, there can be no nexus between that contract and Coast Metals' injury.   It was the eventual dissolution of the joint venture that gave rise to the eventual claim for repayment, but, as stated before, having no contract with Coast Caribbean or Integral Recycling directly, Coast Metals cannot recover from them.

As such, the above arguments raised by Coast Metal are without merit.

2. <u>Joint Venture Never Materialized - Piercing of the Corporate Veil</u>.

In a second effort to recoup its investment, Coast Metals makes a twofold argument.   It avers that Integral Recycling never made its initial contribution of nearly $300,000 to the joint venture.   Because that initial contribution was a condition precedent of the agreement, the joint venture never materialized.   And, since the joint

venture never existed, Coast Caribbean's corporate veil need not be pierced, and instead, they invite they Court to pierce Integral Recycling's veil, and hold the individual Defendants (as members of Integral Recycling) liable to Coast Metals.   The Court cannot accept this invitation.

While Coast Metals delves into the Puerto Rico Civil Code's articles and caselaw governing conditions precedent (also known as conditional obligations or "obligaciones suspensivas") in an attempt to buttress its argument, the Court finds it is inapplicable here.   In conditional obligations, the acquisition of rights, as well as the extinction or loss of those already acquired, shall depend upon the event constituting the condition.   See P.R. Laws Ann., tit. 31, § 3042; see also Raytheon-Catalytic v. Gulf Chem. Corp., 959 F. Supp. 100 (1997) (The insertion of a condition as an element of the obligation is a means of limiting the will of the parties; it is not until the condition appears and is fulfilled that the obligation comes to life).   Thus, when a contract is subject to a condition precedent, if that condition is not met, the contract simply never comes into fruition.

The JVA states that Integral Recycling's initial contribution shall be made "if and when necessary".   Coast Metals argues that this language configures a suspensive condition.

The Court cannot agree with Coast Metals' argument.   On the contrary, the only thing that this clause has established is that Defendants' contribution was tentative, or that it *might* be made, and obviously contemplates that it might never be made, precisely because of its tentative nature.   That is not the same as a suspensive condition, which is

what Coast Metals wants the Court to rule, to wit, that if the contribution is not made, the agreement will not exist.   The contract is clear in its meaning and does not so require.

Puerto Rico law has long held that "[i]f the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall he observed."   P.R. Laws Ann. tit. 31, § 3471; see also Marcial v. Tomé, 144 D.P.R. 522 (1997) (The clear wording of the contract should be heeded when it unequivocally reflects the intent of the parties).   The contract is clear here.

Besides, Defendants have established that they did indeed make payments for different invoices, which Coast Metals has averred were not made as part of the initial investment Defendants were supposed to make.   Yet, even without determining whether such payments were in fact made as part of Defendants' obligations under the JVA, the language in question cannot be called a suspensive condition.   Even if the Court were to accept Coast Metals' arguments and hold that Defendants failed to pay their share of the initial contribution, a matter which it does not reach today, it is evident that the venture continued in operation and business was effected on its behalf (for starters, the contract for the shipment of the metal to Korea in May, over three months after the JVA was signed).

The joint venture was not stillborn because of Defendants' alleged lack of payment of the initial contribution.   Thus, Coast Metals' argument that the joint venture never came into being because of a suspensive condition is without merit.

<u>Westclair, Inc., et al. v. Coast Caribbean Recycling, Inc., et. al.</u>
Civil No. 11-1847 (JAG)
Report and Recommendation
Page 36

Moving on to the corporate veil issue, Defendants have established that there are no documents evidencing that the board of Coast Caribbean approved or ratified any loan, or other money obligation directly with Coast Metals.   Therefore, Coast Metals cannot recover from Coast Caribbean.   Coast Caribbean, however, has filed for bankruptcy, and thus Coast Metals finds itself in the unfortunate position of having to attempt to collect this debt from Integral Recycling, who also did not approve or ratify any loan, or other money obligation directly with Coast Metals.   As such, Coast Metals moves the Court to pierce Integral Recycling's corporate veil.   Again, the Court cannot accept this proposition.

It is black letter law that corporations are presumed to be legal entities separate from their officers, directors, and shareholders.   P.R. Laws Ann. tit. 14, § 3501, *et seq.*; <u>Colón v. Blades</u>, 757 F.Supp.2d 107, 109 (D.P.R. 2010); <u>Milán v. Centennial Commc'ns. Corp.</u>, 500 F.Supp.2d 14, 26 (D.P.R.2007) (*citing* <u>Fleming v. Toa Alta Dev. Corp.</u>, 96 D.P.R. 240, 243 (1968)). Thus, "corporate directors, officers, and shareholders are generally not liable for the debts of the corporation."   <u>Blades</u>, 757 F.Supp.2d at 109; <u>Wadsworth, Inc. v. Schwarz-Nin</u>, 951 F.Supp. 314, 320, 322 (D.P.R. 1996).   As a rule, this shield will almost never be dismantled, yet there are a variety of exceptions to this rule and in certain circumstances, the "corporate veil" may be pierced and individual liability imposed upon the individuals for which the corporate entity served merely as an alter ego. <u>Nieto-Vincenty v. Valledor</u>, 22 F.Supp.3d 153 (D.P.R. 2014).

Coast Metals argues that Integral Recycling's officer, co-Defendant Iván Vázquez, regularly interfered with the yard's operation, and eventually took over the yard's operation via a "coup d'état", which was furthered by several other unsavory incidents, such as fights between the principals, insulting emails and allegedly kicking Westclair's official, Daniel Khodorkovsky, from the Salinas yard.   They posit that these actions were acquiesced to by Coast Caribbean and Integral Recycling's officials, and this somehow made them disregard corporate formalities, and proves that Iván Vázquez' actions were a shell for Integral Recycling.

The Court finds that this is woefully inadequate evidence for the "robust showing" of the disregard of the corporate form that the party seeking to pierce the corporate veil has the burden of producing.   See Escude Cruz v. Ortho Pharm. Corp., 619 F.2d 902, 905 (1st Cir. 1980); see also Milán, 500 F.Supp.2d at 26.   This Court frequently considers a number of federal common law factors to determine whether to disregard the corporate entity: (1) undercapitalization; (2) nonpayment of dividends; 3) extensive or pervasive control by the shareholder or shareholders; (4) intermingling of the corporation's funds, properties or accounts; (5) a failure to observe corporate formalities; (6) siphoning of funds from the corporation; (7) an absence of corporate records; (8) non-functioning officers or directors.   See Situ v. O'Neill, No. 11-1225, 2015 WL 5092877, at *14 (D.P.R. Aug. 25, 2015) (quoting Velázquez v. P.D.I. Enterprises, Inc., 141 F.Supp.2d 189, 193 (D.P.R. 1999) and Town of Brookline v. Gorsuch, 667 F.2d 215, 221 (1st Cir. 1981)).   The Puerto Rico Supreme Court has adopted a similar analysis in holding that "a corporation

is the alter ego or business conduit of its stockholders when there is such unity of interest and ownership that ... the corporation actually is not a separate and independent entity." D.A.C.O v. Alturas Fl. Dev. Corp., 132 D.P.R. 905, 925 (1993).

As is evident from the record, Coast Metals has brought very little evidence before the Court to advance its piercing argument, except the fact that Defendants' affiliates apparently paid for some of Coast Caribbean's needs, something which Coast Metals conveniently forgets was done by itself when *it* paid Coast Caribbean the $125,000 for the line of credit that was part of Westclair Holdings' initial obligations under the JVA. Furthermore, Third Party Defendants the Khodorkovskys have admitted that they have no evidence demonstrating that Coast Caribbean disregarded corporate formalities (one of them "didn't recall" what he meant by that allegation during his deposition; see Docket No. 67, Exhibit 19, p. 82).

As such, Coast Metals' request to pierce any corporate veil, with such a dearth of evidence, lacks merit.

In view of the foregoing, it is recommended that Coast Metals' Motion for Summary Judgment be DENIED (Docket No. 70).

## B. Westclair, Inc.

Westclair's Motion for Summary Judgment is basically a rehash of Coast Metals' arguments, and the Court therefore gives it short shrift.  It argues that, since the condition precedent was not met, the joint venture never came into fruition.  Thus, it posits that the return of Coast Metals' monies must be effected because under Puerto Rico

Westclair, Inc., et al. v. Coast Caribbean Recycling, Inc., et. al.
Civil No. 11-1847 (JAG)
Report and Recommendation
Page 39

law, when an obligation is declared null, the parties must return to each other everything they brought to the table.   Finally, it also argues for the piercing of Integral Recycling's corporate veil.

Since the Court has already determined that the clause in question was not a suspensive condition, this argument should automatically be denied.   Moreover, since the return of the monies loaned by Coast Metals depends on whether the contract was non-existent, and no such determination has been reached, this request should also therefore be denied.   The same applies to Westclair's veil piercing, insofar as it is based on the same facts argued by Coast Metals.

Accordingly, it is recommended that Westclair, Inc.'s Motion for Partial Summary Judgment be DENIED (Docket No. 73) for the same reasons the Court has outlined above.

### C.  Defendants Vázquez brothers and Integral Recycling.

Defendants Vázquez brothers and Integral Recycling bring forth a variety of arguments in favor of dismissal.   Regarding their petition for summary disposition, the Court only attends to one of their arguments as it finds it is dispositive of all of Westclair Inc.'s, claims, to wit, that Westclair, Inc. lacks standing to bring forth its claims.   They also aver that Westclair Holdings stands on equal footing, with no standing to sue.[4]

Additionally, the Vázquez brothers and Integral Recycling contend that they are entitled to judgment as a matter of law in their counterclaim, alleging Westclair Holdings

---

[4] The Court clarifies that Westclair Holdings is not a party to this case inasmuch as the only named Plaintiffs are Westclair, Inc. and Coast Metals, Inc. (Docket No. 41).   However, since the Vázquez brothers and Integral Recycling raise an issue of Westclair Holdings' lack of standing of to sue, the Court is compelled to address this matter.

and Third Party Defendants materially misled them and misrepresented material facts regarding the Fastek machine and Westclair Holdings itself, and thus are personally liable to Defendants under Puerto Rico law for "dolo" or dolus. The Court agrees, and recommends that Defendants' Integral Recycling and the Vázquez brothers' Motion for Summary Judgment be GRANTED IN PART AND DENIED IN PART (Docket No. 77), as explained herein below.

    1. <u>Lack of Standing.</u>

The Court begins with Westclair Holdings, as signatory to the documents at issue here. Defendants aver that Westclair Holdings, the principal contracting party, lacks standing to sue because it does not exist as a corporate entity. Therefore, under Puerto Rico law, it cannot sue. In support thereof, they cite to the case of <u>Lareños en Defensa del Patrimonio Histórico, Inc. v. Municipality of Lares</u>, 2013 WL 4001865 (D.P.R. 2013).[5]

It is uncontested that the JVA states that Westclair Holdings was a California Corporation organized and in good standing under the laws of Delaware. Plaintiff's President, Igor Khodorkovsky, later admitted under oath that this statement was false. Igor Khodorkovsky further admitted that Westclair Holdings never had a bank account or a federal Employer Identification Number, after the Secretaries of State of California and Delaware certified that they had no records for an entity called Westclair Holdings. Igor Khodorkovsky further admitted that he never used the name Westclair Holdings,

_____

[5] This case was the object of a Report and Recommendation issued by the undersigned, which was subsequently adopted in part by the presiding District Judge. Although the District Judge rejected some parts, the presiding District Judge adopted the issue of lack of standing, holding that, because the corporate entity did not exist at the time the events that gave rise to the cause of action occurred, it had no standing to sue.

LLC as a trade name or d/b/a, never registered that name in the California Fictitious Names Registry and never registered it to do business in Puerto Rico.

Furthermore, at some point during the business relationship, co-Defendant César Vázquez requested Westclair Holdings' corporate documents in writing, which were never produced.   Hence, Defendants argue they were never apprised of the fact that Westclair Holdings did not exist, and was never brought to Defendants' attention.   While Plaintiffs contend that "Cesar Vázquez knew the organized entity's name was Westclair, Inc.", they have provided no evidence except a convenient and self-serving declaration at the summary judgment stage to that effect.[6]   These facts and admissions by one of the persons purporting to be an officer of Westclair Holdings, Igor Khodorkovsky, already place Westclair Holdings at a disadvantage.

Compounding Westclair Holdings' problems is the fact that, at the signing of the JVA, Westclair Holdings represented that it was qualified to do business as a foreign corporation and that it was in good standing in the Commonwealth of Puerto Rico, which is in itself a requirement to be able to bring suit.   See 14 P.R. Laws Ann. tit. 14, § 3803(a) ("Any foreign corporation required to comply with the provisions of §§ 3801 and 3807 of this title, that has been doing business in the Commonwealth without authorization, may not initiate any proceeding in any court of the Commonwealth, until such corporation has

---

[6] The First Circuit has refused, on numerous occasions, to allow issues of fact to be created simply by submitting a subsequent contradictory affidavit at the summary judgment stage.   Colantuoni v. Alfred Calcagni & Sons, 44 F.3d 1, 4-5 (1st Cir. 1994); Torres v. E.I. DuPont De Nemours & Co., 219 F.3d 13, 20-21 (1st Cir. 2000); and Morales v. A.C. Orssleff's EFTF, 246 F.3d 32 (1st Cir. 2001).

been authorized to do business in this jurisdiction...”). This alone bars Westclair Holdings’ claims.

Furthermore, Article 13.01(b) of the Puerto Rico General Corporations Law, P.R. Laws Ann. tit. 14, § 3801(b), states that no foreign corporation shall do any business in Puerto Rico, directly or through an agent located in Puerto Rico, until it has paid to the Secretary of State certain fees and filed with that office an official certificate (or similar document) evidencing its corporate existence.   The entity’s application to do business in Puerto Rico must be executed by an authorized office of the corporation with certain specific information.

It is uncontested that Westclair Holdings did not exist in January, 2010 when it entered into the JVA and the Stockholder’s Agreement, and, in fact, has never existed. Thus, Westclair Holdings cannot and could never comply with the filing of a certificate evidencing its corporate existence with the Puerto Rico Secretary of State.   Consequently, the Puerto Rico Secretary of State could not certify that Westclair Holdings was authorized to do business in Puerto Rico.

Westclair Holdings argues that it did no “business” in Puerto Rico, because Mr. Khodorkovsky always acted on behalf of Coast Caribbean.   The Court is unconvinced. Westclair Holdings clearly conducted business in Puerto Rico through its designated representative.   Article 4.03(B) of the JVA provides, in its pertinent part, that the designated representative of Westclair Holdings would commit to move to Puerto Rico with the arrival of the Fastek machine, and further, make a commitment for a minimum

of one year to help, advise, implement and run the joint venture.   Daniel Khodorkovsky, as representative of Westclair Holdings, moved to Puerto Rico and performed in Puerto Rico some of Westclair Holdings' contractual duties, including: running the scrap yard business; arranging and negotiating shipments of scrap metal; and negotiating and dealing with Oceanic General Agency.   While these responsibilities were conducted for the benefit of Coast Caribbean, Westclair Holdings cannot deny that they were *Westclair Holdings'* duties under the JVA.

Furthermore, the Shareholder's Agreement clearly stated that Coast Caribbean's Shareholders would be comprised of three representatives from Integral Recycling and one representative from Westclair Holdings, and further, that all decisions of Coast Caribbean's board shall be made by vote or written consent, with Integral Recycling and Westclair Holdings each having one vote per representative attending the meeting.   To aver now that Daniel Khodorkovsky was acting on behalf of Coast Caribbean and not Westclair Holdings at meetings is disingenuous.

It is undisputed that Daniel Khodorkovsky moved to Puerto Rico, conducted business on behalf of Westclair Holdings and at all times acted as representative of said entity, which was not authorized to do business in Puerto Rico.   The Court therefore can only conclude that Westclair Holdings lacks standing to sue under Puerto Rico law.

Westclair Holdings, however defends itself by stating that the real party in interest is Westclair, Inc., and not Westclair Holdings.   Westclair Holdings further claims that: the Khodorkovskys relied on César Vázquez' experience in the drafting of the JVA and he

knew or should have known about Westclair, Inc. being the correct party; that since their attorney in California, Mark Allenbaugh was responsible for Westclair, Inc.'s corporate documents, they did not know of this mistake; and in any event, they are laymen and, thus, cannot be faulted.   In other words, it is everyone else's fault, but theirs.   Again, the Court cannot agree.

The name Westclair Holdings was introduced to the JVA and to the Defendants by the attorney for Plaintiffs and Third-Party Defendants, Mark H. Allenbaugh, before its execution.   It is Westclair Holdings and *not* Westclair, Inc., which was hand-written in the signature page of the Stockholder's Agreement by none other than Daniel Khodorkovsky, and both he and Igor Khodorkovsky signed their names directly thereunder.   Attorney Allenbaugh, who also filed the necessary paperwork before the Secretary of State in California for Westclair, Inc.'s creation, reviewed and commented extensively on the terms of the JVA and the Stockholder's Agreement on behalf of Daniel and Igor Khodorkovsky before they signed the documents.   Mr. Allenbaugh, a seasoned attorney, failed to correct this rather obvious alleged "mistake".   Moreover, the title page of both the Shareholder's Agreement and the second page of the JVA clearly contain the name "Westclair Holdings, LLC", not Westclair, Inc.   Section 14.01 (A), (B), & (C) of the JVA indicates that the third party defendants both *represented and warranted* to the Defendants that the contracting party was Westclair Holdings, LLC, that it was a California Corporation, duly organized, validly existing and in good standing under the laws of the State of Delaware, with corporate power to execute the JVA.   Furthermore,

the name Westclair Holdings was also included as a party and signatory to the Equipment Services Agreement signed on behalf of said entity by Daniel Khodorkovsky, as Group Vice President, to lease the Fastek machine.

The fact that Westclair Holdings is mentioned at every instance and in every document cannot be said to be a mere mistake, and the Court is baffled that Plaintiffs would even suggest that Defendants "should have known" that Westclair, Inc. was the correct party, and not Westclair Holdings.   At every turn, Third party Defendants held themselves out to be officers of Westclair Holdings.   Finally, Westclair Holdings, not Westclair, Inc., was the signatory to all documents.

The Court is further unconvinced of the Khodorkovskys "laymen" defense.   Igor Khodorkovsky is the President of both Westclair, Inc. and Coast Metals, which are companies in the business of steel purchasing, selling, brokering, packaging, transporting and shipping to international buyers, operations which Coast Metals coordinates with trading partners.   Daniel Khodorkovsky signed the JVA as Vice President of Westclair Holdings and the initial proposal for the joint venture was likewise signed by him as Vice President of Coast Metals.   As officers of large companies that must necessarily enter regularly into these types of agreements, the Court finds it unreasonable that they claim, at the eleventh hour and when the venture turned sour, zero responsibility because they are "laymen".

Having concluded that the signatory to the agreements was Westclair Holdings and not Westclair, Inc., and that Westclair Holdings lacks stranding to bring forth this

suit, the Court now turns to the reasons why Westclair, Inc., as one of the named Plaintiffs in this case, should likewise not be entitled to any relief.

From the outset, and as stated in section A above, it is clear that under Puerto Rico law a contract can only have legal effect between the contacting parties.   P.R. Laws Ann., tit. 31, § 3374.   Having already discussed and concluded that the contact was executed and is only valid between Westclair Holdings and Integral Recycling and no one else, this bars Westclair, Inc.'s cause of action outright.

The only way that Westclair, Inc. could recover in the instant case is if the contract in question contained a stipulation in favor of third parties.   The Puerto Rico Civil Code provides that: "[s]hould the contract contain any stipulation in favor of a third person, he may demand its fulfillment, provided he has given notice of his acceptance to the person bound before it may have been revoked".   P.R. Laws Ann. tit. 31, § 3374.   Unfortunately for Westclair, Inc., neither the JVA nor the Stockholder's Agreement contains any third-party beneficiary clause in its favor.   On the contrary, the JVA contains a specific prohibition against benefiting third parties in its section 16.07 which reads as follows: "[...] This Agreement is for the sole benefit of the parties hereto and nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon any Person, other than the parties and successors and assigns permitted by Section 16.06, any right, remedy or claim under or by reason of this Agreement."   (Docket No. 67-1). Having also Westclair, Inc. failed to present any argument in favor of any possible successor, it has no rights under the JVA and/or the Stockholder's Agreement.

Finally, Defendants posit that under California law, Westclair, Inc., is estopped from bringing forth this suit because it is no longer in good standing and has, in fact, been suspended by the California Secretary of State.   Westclair Inc., counters stating that, under Fed. R. Civ. P. 17(b), a " 'partnership or other unincorporated association' that lacks the capacity to sue under the law of the state in which the court is located 'may sue or be sued in its common name to enforce a substantive right existing under the United States Constitution or laws.'"   Yet, Westclair, Inc., is *not* a partnership or other unincorporated association and Westclair, Inc., has failed to state exactly how it can be something other than a duly incorporated entity certified by the California Secretary of State and a close corporation.   This exception is therefore not applicable to this case.

Puerto Rico Civil Code provides the governing applicable choice of law principles mandating that the issue of a corporation's standing and legal capacity is to be decided by the law of the state of incorporation.   P.R. Laws Ann., tit. 31, §102 provides that a corporations shall be governed by those legal provisions applicable to them, as set forth in their articles of incorporation and by-laws.   P.R. Laws Ann. tit. 31, §103 states that the "civil capacity" of corporations shall be governed by the laws under which the corporation was created.   Finally, P.R. Laws Ann. tit. 31, §104 indicates that a corporation may bring forth civil and criminal actions, in accordance with the laws and regulations under which they were established.   The applicable law here is California, and thus, Westclair, Inc.'s ability to sue would be governed by California law.

Citing to Kaufman & Broad Communities, Inc. v. Performance Plastering, 39 Cal. Rptr. 3d 33, 136 Cal. App. 4th 212, 217–218 (2006); Gar-Lo, Inc. v. Prudential Sav. & Loan Assn. 116 Cal. Rptr. 389, 41 Cal.App.3d 242, 244 (1974), and California Revenue and Taxation Code, Section 23301, Defendants posit that under California law, a suspended corporation can no longer exercise corporate powers, rights and privileges, including the right to defend against and prosecute legal claims.   They are correct.   See Kaufman & Broad Communities, 136 Cal. App. 4th at 217-18 (2006) ("The suspension of the corporate powers, rights, and privileges means a suspended corporation cannot sue or defend a lawsuit while its taxes remain unpaid").

The California Secretary of State has suspended Westclair, Inc.'s powers, rights, and privileges and they have not been reinstated.   And, since the exception to Fed. R. Civ. P. 17(b) does not apply to a full corporation, and Westclair, Inc., can point to no legal authority that would entail it to benefit from the aforementioned exception,[7] the Court can only conclude that Westclair Inc. lacks standing to bring forth the present claims.

In view of the foregoing, Defendants Vázquez brothers and Integral Recyclying's Motion for Summary Judgment should be GRANTED as to Westclair, Inc.'s, lack of standing.   Insofar as this disposes of all claims raised by Westclair Inc., the Court does not reach the other grounds advanced by Defendants for dismissal of the claims brought against them.   For this same reason, the Court does not reach the arguments brought

---

[7] Seeing as though Westclair, Inc. is clearly not a partnership or other unincorporated association.

forth by Westclair, Inc., at Docket No. 166, regarding the alleged lack of permits to operate the yard.

  2. <u>Defendants' Counterclaim and Third Party Complaint, and Third Party Defendants' Khodorkovsky's Motion for Summary Judgment</u>.

  As a secondary matter, Defendants Vázquez brothers and Integral Recycling proffer that they are entitled to judgment as a matter of law in their Counterclaim, insofar as Plaintiffs and Third Party Defendants committed "dolo", or fraud or deceit, in their dealings with them.   Because Third Party Defendants' Khodorkovsky's defense to this particular claim forms the basis for their own Motion for Summary Judgment.   The Khodorkovskys argue for dismissal of the Third Party Complaint, alleging that the claim must be denied because no intent to defraud on their part can be proven.

  Under Puerto Rico law, "dolo" in the formation of a contract is essentially fraud in the inducement, which exists when a party is "induced [by false statements] to execute a contract which ... he [otherwise] would not have made."   P.R. Laws Ann. tit. 31, sec. § 3408; <u>see</u> <u>also</u> <u>Lummus Co. v. Commw. Oil Ref. Co</u>., 280 F.2d 915, 930 n. 21 (1st Cir. 1960).   The party alleging such fraud must demonstrate: "(1) a false representation by the defendant; (2) the plaintiff's reasonable and foreseeable reliance thereon; (3) injury to the plaintiff as a result of the reliance; and (4) an intent to defraud."   <u>P.R. Electric Power Auth. v. Action Refund</u>, 515 F.3d 57, 66 (1st Cir. 2008) (<em>citing</em> P. R. Laws Ann. tit. 31, sec. § 3408); <u>Portugués-Santana v. Rekomdiv Int'l</u>, 657 F.3d 56, 62 (1st Cir. 2011).

  In the instant case, it has been established that Westclair Holdings made several misrepresentations during the negotiations and during the course of the contract

formation.   As the uncontested facts show, the JVA contains several misrepresentations regarding Westclair Holdings as a corporate entity and its standing, as well as regarding the ownership of the Fastek machine and the rights to it.

Defendants aver that an essential reason why Integral Recycling agreed to enter in the JVA was to obtain a competitive advantage in the local market by acquiring the exclusive right to use the Fastek shipping container loading system in Puerto Rico. Daniel Khodorkovsky, Westclair, Inc. Group's Vice President, told Defendants during the negotiations of the JVA that Coast Metals allegedly a member of the Westclair group, had partnered with Advanced Steel Recovery, Inc. in the development of the Fastek shipping container loading system, a statement which later turned out not to be true.

Furthermore, Westclair Holdings, as part of its commitments under the JVA, agreed to provide a free lease to Coast Caribbean of the Fastek Machine, which was later repossessed because it did not actually belong to Westclair Holdings.   Art. 1.01 the JVA defines Westclair Holdings "Know-How" as "patented inventions, applications, data, processes, compositions, techniques, and other technical information proprietary to Westclair, which is solely owned by Westclair [Holdings, LLC] or which Westclair [Holdings, LLC] has the right to control the use of Fastek machine."   While Westclair Holdings defends itself stating that it did not need to own the machine because the JVA included the words "right to control", this is unpersuasive, since Art. 1.01 of the JVA defines the "Fastek Machine" as "an equipment designed to fully automate the containerization of scrap metal, *patented and owned by Westclair [Holdings, LLC]*."

Therefore, Westclair Holdings' commitment to the JVA was to supply, free of charge, the Fastek technology, which it represented it owned and patented, which was untrue.   The fact that the Fastek machine was repossessed within a few months after arriving in Puerto Rico and was, in fact, placed at a company in direct competition of Coast Caribbean is clear evidence of this.

Yet, the Court finds the matter contains issues of motive and intent.   By its very nature, intent to deceive is a factual matter, and it has been well established that unsettled issues of motive and intent as to the conduct of any party will normally preclude the Court from granting summary judgment.   See Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150 (2000) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"); Mulero-Rodríguez v. Ponte, Inc., 98 F.3d, 670 677 (1st Cir. 1996)(reversing summary judgment and emphasizing that "determinations of motive and intent … are questions better suited for the jury").

The uncontested facts make clear that Westclair, Inc. and the Khodorkovskys made misrepresentations, which Defendants aver they relied upon.   It will be up to Third Party Defendants to explain their actions and motivations to a jury, and it will be up to the jury to ultimately determine whether these facts evidence intent to defraud and how that reliance, if any, affected Defendants.

The Court is therefore precluded from deciding this matter, since issues of motive and intent should not be addressed via summary judgment and are better suited for a jury

to assess.  As such, it is recommended that both Defendants' Motion for Summary Judgment as to the "dolo" claim and the Third Party Defendants' Motion for Summary Judgment be DENIED.

As a final matter, Defendants posit that Third Party Defendants Khodorkovskys are personally liable to them for damages as a result of their actions.   This, they say, is because Puerto Rico Corporations law provides that: "[a]ll persons acting as a corporation without having the authority to do so, shall be severally liable of all debts and obligations incurred or assumed as a result of such actions".   P.R. Laws Ann. tit. 14, sec. 3505(c).

Although the corporate form normally shields its officers, the Court already found that neither Westclair Holdings nor Westclair, Inc. had authority from the Puerto Rico Department of State to conduct business in Puerto Rico.   Westclair Holdings, the main signatory to all the paperwork, was in fact a ghost corporation, having never existed. They thus cannot be protected, and personal liability against the Third Party Defendants, their spouses, and their conjugal partnerships must therefore be imposed under Puerto Rico law.   Therefore, it is recommended that, judgment as to personal liability of Third Party Defendants, be GRANTED.   The Court leaves unresolved for trial the amounts of such damages, having not been presented with that issue for disposition.

## CONCLUSION

For the aforementioned reasons, the undersigned recommends the following:

1.  Coast Metals' Motion for Summary Judgment be DENIED (Docket No. 70);

2.   Westclair, Inc.'s Motion for Partial Summary Judgment be DENIED (Docket No. 73);

3.   Defendants' Integral Recycling and the Vázquez brothers' Motion for Summary Judgment be GRANTED IN PART AND DENIED IN PART (Docket No. 77) as follows: GRANTED as to Westclair, Inc.'s, lack of standing; GRANTED as to personal liability of Third Party Defendants and DENIED as to "dolo".

4.   Third Party Defendants Khodorkovsky's Motion for Summary Judgment be DENIED (Docket No. 78).

Finally, in an effort to have a more fully developed record, the undersigned recommends that both Motions to Strike (Docket Nos. 97 & 110) be DENIED.

IT IS SO RECOMMENDED.

**PURSUANT TO THE DIRECTIVES OF THE PRESIDING DISTRICT JUDGE, AND THE PENDING MOTIONS BEING REPORTABLE ON MARCH 31, 2016, THE PARTIES HAVE UNTIL MARCH 17, 2016 TO FILE ANY OBJECTIONS TO THIS REPORT AND RECOMMENDATION.**   See Amended Local Rules.   Failure to file same within the specified time waives the right to appeal this order.   See Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986) and Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988).

Westclair, Inc., et al. v. Coast Caribbean Recycling, Inc., et. al.
Civil No. 11-1847 (JAG)
Report and Recommendation
Page 54

     In San Juan, Puerto Rico, on this 10th day of March, 2016.

                    S/CAMILLE L. VELEZ-RIVE
                    CAMILLE L. VELEZ RIVE
                    UNITED STATES MAGISTRATE JUDGE